1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | I.W., a minor, by and through his mother, | Case No.  1:24-cv-01074-JLT-BAM
Ruth Aguirre,
12 |                                          | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR APPROVAL OF MINOR'S COMPROMISE**
|                        Plaintiff,
13 |                                          |
|            v.                              |
14 |                                          |
|                                          | (Doc. 21)
15 | CLOVIS UNIFIED SCHOOL DISTRICT,           |
|                                          | **ORDER GRANTING JOINT REQUEST FOR STATUS OF MINOR'S COMPROMISE**
16 |                        Defendant.         |
17 |                                          |
|                                          | (Doc. 25)
18 |                                          |

19                        **Findings and Recommendations**

20   **I.      INTRODUCTION**

21           I.W., a minor, by and through his mother and guardian ad litem, Ruth Aguirre, requests

22   this court approve the settlement and compromise of I.W.'s claims.  The motion is before the

23   undersigned magistrate judge for the issuance of findings and recommendations.  (*See* Doc. 6-1at

24   2.)  The Court deemed the motion suitable for decision without oral argument as provided under

25   Local Rule 230(g), and vacated the January 24, 2025 hearing.  (Doc. 23.)  No opposition or

26   objection to the motion has been filed, and the time in which to do so has passed.  However, on

27   March 19, 2025, the parties filed a joint request for status of minor's compromise.  (Doc. 25.)

28   ///

                                            1

Having considered the motion, the terms of the settlement, and the record in this matter, the Court will recommend that the motion for approval of minor's compromise be granted. The parties' request for status (Doc. 25) is resolved by the issuance of these findings and recommendations and is therefore GRANTED.

**II.    BACKGROUND**

On September 11, 2024, Plaintiff I.W. instituted this action by filing a complaint against Defendant Clovis Unified School District ("CUSD") asserting claims arising under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). (Doc. 1.)

On September 17, 2024, the Court granted the petition of Ruth Aguirre, Plaintiff's mother, and appointed her as guardian ad litem. (Doc. 13.)

On October 2, 2024, Plaintiff filed a first amended complaint seeking redress under the ADA, Section 504, the Individuals with Disabilities Education Act ("IDEA"), and the California Education Code. The amended complaint included a partial appeal of an administrative decision. (Doc. 15.)

On November 27, 2024, Plaintiff filed a motion for preliminary injunction. (Doc. 17.)

On December 3, 2024, the parties reached a settlement. (Doc. 21-1, Declaration of Andréa Marcus ("Marcus Decl.") at ¶ 15; Doc. 21-3, Compromise and Release Agreement ("Agreement").)

On December 5, 2024, CUSD appeared in this action, and Plaintiff filed a notice of settlement pending approval by CUSD's governing board. (Docs. 18, 19.) Given the notice of settlement, the Court vacated the hearing on the motion for preliminary injunction. (Doc 20.)

On December 16, 2024, Plaintiff filed the instant motion for approval of the minor's compromise. According to the motion, upon the Court's approval, the Agreement will become final as CUSD's governing board ratified it on December 13, 2024. (Doc. 21 at 25.)

**III.    LEGAL STANDARD**

No compromise or settlement of a claim by a minor is effective unless it is approved by the Court. L.R. 202(b). In actions in which the minor is represented by an appointed

representative pursuant to appropriate state law, excepting only those actions in which the United States courts have exclusive jurisdiction, the settlement or compromise must first be approved by the state court having jurisdiction over the personal representative. L.R. 202(b)(1).  In all other actions, the petition for approval of a proposed settlement or compromise must disclose, among other things, the following:

> the age and sex of the minor. . . , the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount . . . was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. If reports of physicians or other similar experts have been prepared, such reports shall be provided to the Court . . . .

L.R. 202(b)(2).

Additionally, when, as here, the minor is represented by an attorney, the representation must be disclosed to the Court, including the terms of employment and whether the attorney became involved in the application at the instance of the party against whom the causes of action are asserted, whether the attorney stands in any relationship to that party, and whether the attorney has received or expects to receive any compensation, from whom, and the amount.  L.R. 202(c).

Federal Rule of Civil Procedure 17(c) also imposes on district courts a special duty to safeguard the interests of litigants who are minors.  *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011).  In the context of proposed settlements in suits involving minor plaintiffs, the district court's special duty requires it to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)).  In *Robidoux*, the Ninth Circuit cautioned that this inquiry "requires only that the district court consider whether the net recovery of each minor plaintiff is fair and reasonable, without regard to the amount received by adult co-plaintiffs and what they have agreed to pay plaintiffs' counsel." *Id.* at 1182 (holding that district court erred in denying settlement based solely on the proportion of the settlement going to plaintiffs' counsel). The district court therefore limits the scope of its review "to the question whether the net amount

3

distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id.* at 1182-83.

*Robidoux* expressly limited its holding to cases involving settlement of a minor's federal claims. 638 F.3d at 1179 n.2. Given that the present action is premised on federal question jurisdiction, with the Court exercising supplemental jurisdiction over any state law claims, the Court will apply the *Robidoux* standard when reviewing the settlement. *See Lobaton v. City of San Diego*, No. 3:15-cv-1416-GPC-DHB, 2017 WL 2610038, at *2 (S.D. Cal. Jun. 16, 2017) (applying *Robidoux* to evaluation of minor's settlement where district court exercising supplemental jurisdiction over state law claims).

## IV.    DISCUSSION

### A.  The Petition Satisfies the Requirements of Local Rule 202

#### 1.  The Minor

According to the moving papers and record, the minor Plaintiff entered the sixth grade on August 25, 2022, as an 11-year-old child. He was born in 2011, making him approximately 13 years old. (Doc. 21 at 2; Doc. 21-4 at 1.) Plaintiff has been diagnosed with autism, attention deficit hyperactivity disorder ("ADHD"), and a speech and language impairment. (Doc. 21 at 2.)

#### 2.  Disclosure of Attorney Interest

The moving papers specify that Plaintiff is represented by Andréa Marcus, who was retained by Plaintiff's mother. (Marcus Decl." at ¶¶ 3-4; Doc. 21-8, Retainer Agreement.) Counsel's representation of Plaintiff has been done on a contingency basis. (Marcus Decl. ¶ 5.) Payment of legal fees under the retainer agreement is contingent on the settlement of Plaintiff's claims, or a court order for attorneys' fees and costs through prevailing party status. (Doc. 21-8, Retainer Agreement ¶ 2.) Counsel did not become involved in this case, either directly or indirectly, at the insistence of CUSD. Counsel also has no relationship to CUSD. (Marcus Decl. at ¶ 17; Doc. 21 at 24.) To date, counsel has not received any payment for work on the six matters that Plaintiff and his mother have with CUSD. (Marcus Decl. ¶ 5.)

#### 3.  Causes of Action to Be Settled

The following allegations are asserted in the moving papers: Plaintiff entered CUSD with

4

a history of well-documented and significant behavior needs.  He received publicly funded

Applied Behavior Analysis ("ABA") at home based on his diagnosis of autism.  Upon entering

CUSD, Plaintiff's mother requested that Plaintiff be provided a trained one-on-one support using

appropriate positive behavior methodologies to resolve his autism, but the request was denied.

Plaintiff's mother repeated this request throughout Plaintiff's schooling at CUSD, but CUSD

denied the request each time.  (Doc. 21 at 2-3.)

Within weeks of starting school at CUSD, Plaintiff began returning home from school

with unexplained bruises and reported having accessed very inappropriate content on school

computers, impacting his sleep and behavior.  (Doc. 21 at 4.)

At the first Individualized Education Program ("IEP") meeting under the IDEA held by

CUSD for Plaintiff, Plaintiff's mother requested that Plaintiff's autism be identified in his IEP as

qualifying him for special education, that he be reasonably accommodated with one-on-one

support using positive behavior techniques, and that he be allowed access to the general education

setting.  Instead, CUSD altered Plaintiff's IEP without discussion, removing Plaintiff from the

graduation track education his nondisabled peers enjoy despite no reliable cognitive assessment

justifying such a move given Plaintiff's noted lack of participation in testing.  CUSD also

eliminated behaviorist services from his IEP, reduced the specialized instruction services included

in his IEP, and offered IEP goals that were recycled from those which had been repeatedly unmet

without appropriate autism support for years.  Rather than providing support for Plaintiff's

autism, CUSD responded to his autism-related behaviors with punitive measures, segregation

from typical peers, and elimination of academic expectations his nondisabled peers sought to

achieve.  (Doc. 21 at 4-5.)

When the rest of the children at his school attended Sonora science camp at the beginning

of the school year, which would have given Plaintiff the opportunity to become part of his new

school's community, CUSD informed Plaintiff's mother that Plaintiff's behavior was going to

keep him from being able to attend, and led her to believe the camp was cost-prohibitive, in lieu

of offering Plaintiff the one-on-one support his autism required as a reasonable accommodation

he needed to attend, and one Plaintiff's mother had requested since Plaintiff entered CUSD.

1  CUSD reportedly was aware that Plaintiff required one-on-one support to attend Sonora, but

2  refused to offer it.  CUSD thus prevented Plaintiff from enjoying this important opportunity, an

3  opportunity that his nondisabled peers enjoyed, because of his disability.  (Doc. 21 at 5.)

4       CUSD reportedly refused to offer Plaintiff the reasonable accommodation of one-on-one

5  support that he required to attend general education classes—or any classes—successfully.

6  CUSD instead continued to allow Plaintiff's autism to negatively impact his peers and teachers

7  and prevented him from benefiting from CUSD's programs and facilities, while refusing him the

8  reasonable accommodations his disability required.

9       Plaintiff began returning home from school with injuries (bloody nose, concussion, hand-

10 print bruising on his arms, and bruising from being kicked on his legs).  He started to divulge to

11 his mother that staff was abusing him verbally and physically.  Although CUSD staff regularly

12 referenced viewing Plaintiff's behavior incidents on camera or video to confirm Plaintiff was at

13 fault and that nobody was responsible for his injuries, no images or video were produced in

14 response to Plaintiff's request for them.  They were alleged to have been "taped over" upon being

15 subpoenaed by Plaintiff's counsel.  (Doc. 21 at 6.)

16      Plaintiff also complained that his teacher, Jennifer Tonkinson, pulled the backpack he was

17 wearing, threw it on the floor, stepped on it, and threw it to the other end of the room.  Ms.

18 Tonkinson put a mirror up to Plaintiff's face and told him to look at how he looked (something

19 Ms. Tonkinson admitted under oath at hearing) and called Plaintiff a jerk (something Ms.

20 Tonkinson denied at hearing).  Plaintiff used his hand to get the mirror out of his face and the

21 mirror fell and broke.  Plaintiff's mother repeatedly requested CUSD provide Plaintiff the

22 reasonable accommodation of one-on-one support—for his sake and the sake of his teachers and

23 peers.  CUSD refused.  (Doc. 21 at 6.)

24      Despite the injuries and reports of verbal and physical abuse by staff, without video

25 footage Plaintiff's mother had no evidence to prove Plaintiff was being mistreated at school

26 unless CUSD staff would come forward and testify on Plaintiff's behalf, and be at odds with their

27 employer's defense.  Plaintiff's mother was left with no choice but to keep Plaintiff home for his

28 safety and to file an administrative complaint.  Throughout twenty days of hearing, before the

Office of Administrative Hearings ("OAH"), CUSD staff consistently testified that nobody had ever touched Plaintiff at school.  Given Plaintiff's autism, and age, he was not made to testify. There was not the proof needed to prove the physical and emotional abuse endured by Plaintiff at CUSD.  The lack of education Plaintiff received while at CUSD was widely acknowledged by CUSD staff, but was blamed on Plaintiff's behaviors, which CUSD staff largely testified were volitional on his part, and unrelated to his autism in any way.  (Doc. 21 at 7.)

The following cases are resolved through the Agreement:

1.  OAH Case No. 2023120051

On November 30, 2023, CUSD filed a request for due process hearing with OAH, Case No. 2023120051.  CUSD alleged that Plaintiff's parents were not entitled to an Independent Educational Evaluation ("IEE").  Plaintiff's mother had requested an IEE, in part, to challenge CUSD's determination that Plaintiff did not qualify for IDEA protections and services based on his autism.  CUSD withdrew the case on December 12, 2023, before the hearing.

2.  OAH Case No. 2024010630

On January 19, 2024, Plaintiff filed a due process complaint against CUSD before OAH, Case No. 2024010630.  Plaintiff amended the complaint on February 19, 2024.  The following issues were raised during the hearing:

1.  Did Clovis deny Student a FAPE [Free Appropriate Public Education] in the 2022-2023 school year from August 22, 2022, by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's IEP dated May 25, 2022, as amended, and the March 28, 2023 IEP, as amended, and by:

   a.  Failing to offer adequate social communication and behavior support;
   b.  Failing to offer frequency, duration, or specify group or individual, for counseling and psychological services;
   c.  Failing to address all areas of educational need by failing to offer speech and language and social skills services;
   d.  Failing to properly consider additional supports and services which would facilitate Student's educational placement with non-disabled children to the maximum extent appropriate; and
   e.  Failing to address Student's unique needs regarding transportation?

2.  Did Clovis deny Student a FAPE in the 2023-2024 school year, through January 19, 2024, by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's March 28, 2023 IEP, as amended, and by:

a. Failing to offer adequate social communication and behavior support;
b. Failing to offer frequency, duration, or specify group or individual, for counseling and psychological services;
c. Failing to address all areas of educational need by failing to offer speech and language and social skills services;
d. Failing to properly consider additional supports and services which would facilitate Student's educational placement with non-disabled children to the maximum extent appropriate;
e. Failing to address Student' unique needs regarding transportation?

3. Did Clovis deny Student a FAPE in the 20222-2023 and 2023-2024 school years, through January 19, 2024, by failing to properly address Student's and Parent's concerns regarding bullying and Student's bruises and injuries at school?

(Doc. 21 at 8-10.)

On September 20, 2024, after twenty days of hearing, OAH issued its decision and made the following relevant findings:

1. "Clovis' behavioral strategies reinforced Student's negative behaviors.  Rather than deter him, they incentivized him," and all behavior intervention plans offered by CUSD were "ineffective."

2. From September 16, 2022, through the end of the 2002-2023 school year, Clovis denied Student a FAPE by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's IEP dated May 25, 2022, as amended, and the March 29, 2023 IEP, as amended, by failing to offer adequate social communication and behavior support.

3. From March 28, 2023, through the end of the 2022-2023 school year, Clovis denied Student a FAPE by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's March 28, 2023 IEP, as amended, by failing to address all areas of educational need by failing to offer speech and language services.

4. Clovis denied Student a FAPE in the 2022-2023 school year from August 22, 2022, by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's IEP dated May 25, 2022, as amended, and the March 28, 203 IEP, as amended, by failing to offer social skills services.

5. Clovis did not deny Student a FAPE in the 2022-2023 school year from August 22, 2022, by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrict environment in Student's IEP dated May 25, 2022, as amended, and the March 28, 2023 IEP, as amended, by failing to properly consider additional supports and services which would facilitate Student's educational placement with non-disabled children to the maximum extent appropriate;

6. Clovis did not deny Student a FAPE in the 2022-2023 school year from August 22, 2022, by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrict environment in Student's IEP dated May 25, 2022, as amended, and the March 28, 2023 IEP, as amended, by failing to address Student's unique needs regarding transportation.

7. From the beginning of the 2023-2024 school year, through November 14, 2023,

8

Clovis denied Student a FAPE by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's March 28, 2023 IEP, as amended, by failing to offer adequate behavior support.

8. From November 15, 2023, through January 19, 2024, Clovis did not deny Student a FAPE by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's March 28, 2023 IEP, as amended, by failing to offer adequate behavior support.

9. Clovis did not deny Student a FAPE in the 2023-2024 school year, through January 19, 2024, by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's March 28, 2023 IEP, as amended, by failing to offer social communication support.

10. Clovis denied Student a FAPE in 2023-2024 school year, through January 19, 2024, by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's March 28, 2023 IEP, as amended, by failing to address all areas of educational need by failing to offer speech and language services.

11. Clovis did not deny Student a FAPE in the 2023-2024 school year, through January 19, 2024, by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's March 28, 2023 IEP, as amended, by failing to consider additional supports and services which would facilitate Student's educational placement with non-disabled children to the maximum extent appropriate.

12. Clovis did not deny Student a FAPE in the 2023-2024 school year, through January 19, 2024, by failing to offer IEPs reasonably calculated to render educational benefit in Student's least restrictive environment in Student's March 28, 2023 IEP, as amended, by failing to address Student's unique needs regarding transportation.

13. Clovis did not deny Student a FAPE in the 2022-2023 and 2023- 2024 school years, through January 19, 2024, by failing to properly address Student's and his mother's concerns regarding bullying and Student's bruises and injuries at school.

(Doc. 21 at 10-13.)

Plaintiff explains that the OAH decision ordered CUSD to establish and maintain a compensatory education fund for Plaintiff's use in the amount of $47,610.00, and Plaintiff partially appealed the OAH decision in this Court. The partial appeal asserts that the OAH decision misrepresented facts and failed to apply law, and left Plaintiff without programming going forward. Plaintiff had requested that OAH grant him appropriate prospective education according to proof. However, the OAH decision made no determination as to Plaintiff's appropriate placement so that he could return to school with his autism properly supported. Plaintiff claims that this left him without what he sought at the hearing: an order for appropriate placement, and the supports, services, accommodations and school of attendance, i.e., proper

1    placement under the IDEA. (Doc. 21 at 13-14.)  Plaintiff filed a motion for preliminary

2    injunction, seeking this Court's determination of appropriate placement for Plaintiff, on

3    November 27, 2024, so that Plaintiff could return to school.  (*Id.* at 14.)

4        4.  OAH Case No. 2024041077

5        On May 22, 2024, Plaintiff filed a case with OAH, Case No. 2024041077, alleging that

6    CUSD denied him a FAPE under the IDEA from August 22, 2022, through the present.

7        5.  OAH Case No. 2024060139

8        On June 4, 2024, CUSD filed a case with OAH, Case No. 2024060139, seeking to defend

9    the adequacy of its educational offerings for Plaintiff, "placement at a classroom in a strip mall,

10   segregated from typical children, and without access to education toward a diploma or an

11   individualized ABA program in compliance with BACB ethical guidelines."  (Doc. 21 at 14-15.)

12   On July 29, 2024, OAH consolidated these cases, Case Nos 2024041077 and 2024060139, for

13   adjudication.

14       6.  Federal District Court Civil Action

15       On September 11, 2024, Plaintiff filed the instant civil action alleging violations of

16   Section 504 and the ADA.  As detailed above, Plaintiff subsequently amended his complaint to

17   include the partial appeal of the OAH decision in Case No. 2024010630.

18       **B.  The Terms of the Settlement are Fair and Reasonable**[1]

19       The Agreement fully resolves all known and unknown claims, rights, demands, or causes

20   of action between Plaintiff and CUSD that were raised or could have been raised up to December

21   4, 2024, in exchange for the following settlement terms:

22       1.  Parents agree that through extended school year 2025, Plaintiff will be deemed a

23           parentally-placed private school student with no right to a FAPE through ESY 2025.

24       2.  CUSD agrees to establish a compensatory education fund for the costs of Plaintiff's

25           compensatory education in the amount of **$170,000.00** for educational related services

26           by a qualified private provider of parents' choice, or to pay for school tuition.  This is

27   ───────────────

28   [1] The terms of the settlement are summarized from those detailed in the Agreement, Doc. 21-3, and
     Plaintiff's moving papers.

in addition to the compensatory education fund of **$47,610.00** previously ordered by OAH and established by CUSD.  The compensatory education fund ordered by OAH will be utilized first.  For purposes of the Agreement, "educational related services" means services defined under federal and state special education law, including but not limited to vision therapy services, but also includes private school tuition, including but not limited to Fusion Academy, and summer programs (camps or classes) where Plaintiff can practice social engagement and social communication skills with an ABA aide.

3.  Parents are solely responsible for determining what services or education they would like Plaintiff to receive through the compensatory fund. Parents are exclusively responsible for obtaining the compensatory services described in the Agreement.

4.  CUSD agrees that Plaintiff's parents can seek reimbursement for transportation to compensatory services at the IRS mileage reimbursement rate or for Uber or Lift services.

5.  CUSD agrees to conduct assessments of Plaintiff in Spring 2025 according to an agreed upon assessment plan and to schedule an IEP team meeting on or before May 1, 2025, for the purpose of reviewing assessment results and developing an educational program for Plaintiff in the 2025-2026 school year.

6.  CUSD agrees to conduct a functional behavior assessment and an assistive technology assessment.

7.  CUSD agrees to fund an IEE in the area of occupational therapy.

8.  CUSD agrees to fund an inclusion assessment to be conducted by a specified provider or, if necessary, a replacement assessor.

9.  CUSD agrees to add to Plaintiff's IEP at the IEP team meeting scheduled on or before May 1, 2025, the following:

    a.  Behavior technician(s) from a CDE-certified Non -Public Agency ("NPA") to provide 1:1 support to Plaintiff throughout his regular school day while he is at school during his regular school day.  The behavior technician(s) shall be

1    trained by a Board Certified Behavior Analyst ("BCBA") certified by the CDE
2    as an NPA.

3       b.  Contract with a CDE-certified NPA for four (4) hours monthly of support and
4    consultation with CUSD staff by the BCBA. The BCBA will also be
5    responsible for supervising the behavior technician consistent with the
6    requirements of the Behavior Analyst Certification Board and the ethical
7    guidelines.

8       c.  A transition plan to facilitate Plaintiff's transition to his 2025-2026 school year
9    placement. The transition plan will include training of staff who will be
10    working with Plaintiff by the BCBA who is certified by CDE as an NPA prior
11    to the first day of the 2025-20926 school year.

12       d.  Two (2) thirty (30) minute weekly sessions of individualized speech/language
13    therapy to address pragmatics and expressive and receptive language skills.

14       e.  Aide support during special education transportation to and from school.

15       f.  Individual counseling by an educationally related mental health services
16    provider for 240 minutes monthly, and with consultation from the provider
17    with CUSD staff working with Plaintiff 60 minutes monthly.

18       g.  Placement in CUSD's Academic Core Essential ("ACE") program for core
19    academics of English, math, and science located at Clovis West High School,
20    which is a high school regular diploma-track program, for a total not to exceed
21    42 percent in the special education environment in the 9th grade year. Plaintiff
22    will be in the general education environment for the remaining portion of his
23    educational program.

24       h.  Change Plaintiff's primary eligibility category to autism.

25    10. CUSD agrees that the May 2025 IEP will serve as the stay-put placement, unless
26    changes are ordered by OAH.

27    11. CUSD agrees to pay reasonable attorneys' fees and costs in the amount of
28    $475,000.00.

1    (Doc. 21-3, Agreement ¶ 3(a), (b); Doc. 21 at 22-23.)

2          According to Plaintiff, the Agreement provides extensive funding for educational services

3    and tuition, which will enable Plaintiff's mother to hire experts in ABA to teach Plaintiff

4    neurotypical behaviors and social communication norms, and fund recreational activities where

5    Plaintiff can utilize the ABA support and learn the prosocial behaviors, among peers, that he

6    needs to be able to use to succeed in the school setting.  It also provides for those services when

7    he returns to the school setting in the Fall of 2025 through his IEP, and for private school tuition

8    if Plaintiff prefers not to return to CUSD.  Plaintiff further indicates that the agreement provides

9    significant and flexible relief tailored to Plaintiff's needs, while acknowledging his autism as the

10   basis for educational eligibility.  (Doc. 21-1 at 19.)

11         Plaintiff asserts that courts have approved settlements with lesser benefits to the child, and

12   that the Agreement in this case exceeds recoveries in comparable cases.  Plaintiff has directed the

13   Court to caselaw to demonstrate the fairness of the proposed settlement.  (Doc. 21-1 at 17-19,

14   citing *Warchol v. Kings Cnty. Office of Educ.*, No. 1:17-cv-00106-DAD-MJS, 2018 WL 1185053

15   (E.D. Cal. Mar. 7, 2018) (approving net recovery of $56,488.32 in settlement involving alleged

16   verbal and physical abuse of minor student diagnosed with autism); *D.C. ex rel. T.C. v. Oakdale*

17   *Joint Unified Sch. Dist.*, No. 1:11-cv-01112-SAB, 2013 WL 275271 (E.D. Cal. Jan. 23, 2013)

18   (approving $30,000 disbursed to minor and $18,379 dispersed to minor's mother after minor was

19   injured by restraints used on minor in school); *T.B. v. Chico Unified Sch. Dist.*, No. 2:07-cv-

20   00926-GEB-CMK, 2010 WL 1032669 (E.D. Cal. Mar. 19, 2010) (approving net recovery of

21   $16,500 settlement to minor for alleged unnecessary use of force by school district); *C.F. v. San*

22   *Lorenzo Unified Sch. Dist.*, No. 16-cv-01852-RS, 2016 WL 4521857 (N.D. Cal. Aug. 29, 2016)

23   (approving $10,000 allocation for minor's education services and $55,000 for attorneys' fees in

24   action alleging claims arising under IDEA); and *A.A. v. Clovis Unified Sch. Dist.*, No.1:13-cv-

25   01042-AWI-MJS, 2018 WL 1167927 (E.D. Cal. Mar. 6, 2018), *report and recommendation*

26   *adopted sub nom.*, No. 1:13-cv-01043-AWI-MJS, 2018 WL 1453243 (E.D. Cal. Mar. 23, 2018)

27   (approving $63,200 deposit in special needs trust to provide minor with FAPE in action alleging

28   violations of IDEA, ADA, Section 504, the Fourteenth Amendment, and state laws).)

Having considered the recovery in other cases that designated funds to be used for educational and related services, the facts of this case, and the specific claims, the Court finds the settlement is fair and reasonable.

**C. The Manner of Distribution of the Settlement Funds is Reasonable**

As indicated above, CUSD has agreed to establish a compensatory education fund totaling $170,000.00, which does not include the compensatory education fund ordered by OAH and previously established by CUSD. Plaintiff's parents may obtain the educational related services discussed in the Agreement through any one or combination of the following payment options:

Payment Option A: CUSD enters into a contract with a provider of the parents' choice so long as the provider is certified by the California Department of Education and is willing and able to meet the contracting provisions required by CUSD for the compensatory services;

Payment Option B: Parents may obtain compensatory services at their own expense from a qualified provider and seek reimbursement for those services by submitting proof of payment of those to CUSD Special Education Local Plan Area Administrator;

Payment Option C: Parents may contract with a qualified private provider for the compensatory services and request direct payment from CUSD to the qualified provider. (Agreement ¶ 3(b)(iii)(1)(a)-(c).)

CUSD will utilize the compensatory education fund that was ordered by OAH and established by CUSD according to that order first, before utilizing the compensatory education fund provided for by the Agreement. Parents can use the same payment options for this compensatory education fund. (Agreement ¶ 3(b)(iii)(6).)

Given the amount of the education fund, along with the pre-existing education fund, the flexibility afforded Plaintiff's parents in selecting compensatory services, and the multiple payment options available to obtain such services, the Court finds the methods for disbursement to be practical, proper, and reasonable.[2]

---

[2] For instance, depositing money in a blocked account that requires Court approval for each disbursement would not be appropriate or feasible given the already existing education fund, the ongoing nature of the compensatory services, CUSD's ability to contract with, or pay directly, service providers, and the flexibility afforded Plaintiff's parents in obtaining and selecting the compensatory services.

### D. Attorneys' Fees

"Absent a showing of good cause, courts in the Eastern District of California generally consider twenty-five percent of the recovery as the benchmark for attorneys' fees in contingency cases for minors." *J.M. v. Tulare Cty. Sch. Dist.*, No. 1:21-cv-01766-KJM-EPG, 2025 WL 436146, at *3 (E.D. Cal. Jan. 27, 2025).

Here, the proposed settlement anticipates payment of $475,000.00 for attorneys' fees and costs. (Agreement ¶ 3(b)(ix).) Plaintiff explains that this fee amount reflects the advocacy and litigation efforts undertaken to secure the Agreement through six different matters on behalf of Plaintiff over more than two years. (Doc. 21 at 22-23.) Counsel's attached invoice for combined billings in the six matters involving Plaintiff and CUSD show fees and costs exceeding $500,000, which is greater than the amount contemplated by the Agreement. (*See* Doc.21-9.) The Court notes that the attorneys' fees are separate from the compensatory fund, services, assessments, and other terms set forth in the Agreement for the benefit of Plaintiff. Because the Ninth Circuit instructs district courts to limit the scope of review to the fairness of the recovery to the minor plaintiff and not the value designated for counsel, the Court does not find, in the present circumstances, that the fees are excessive or unreasonable.

## V.    CONCLUSION AND RECOMMENDATION

For the reasons stated, the Court finds the settlement is fair and reasonable. Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for approval of minor's compromise (Doc. 21) be GRANTED; and

2.  The settlement be APPROVED as fair and reasonable.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir.

2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).  <u>To expedite the matter, if the parties have no objections, then the parties may each file a statement of non-objection before expiration of the fourteen-day period.</u>

IT IS SO ORDERED.

Dated:   **April 1, 2025**                    ____/s/ Barbara A. McAuliffe____
                                            UNITED STATES MAGISTRATE JUDGE